SNIDER RAY WILLIAMS

versus                                                  CIVIL NO. 08-0229
                                                                    JUDGE TOM STAGG

ANTHONY B. SIMS AND
CELADON TRUCKING SERVICES, INC.

## MEMORANDUM RULING

Before the court is a motion to remand filed by the plaintiff, Snider Ray Williams ("Williams"). See Record Document 21. Based on the following, Williams's motion to remand is **DENIED**.

### I. BACKGROUND

**A. Introduction.**

On January 16, 2008, Williams filed a petition for personal injuries against Anthony B. Sims ("Sims") and Celadon Trucking Services, Inc. ("Celadon") in state district court. On February 15, 2008, the defendants timely removed the case to federal court asserting diversity jurisdiction. On November 25, 2008, Williams filed a motion to remand, arguing that this court lacks subject matter jurisdiction over his claims because both he and Sims are citizens of Louisiana. On December 15, 2008, the defendants filed a response in opposition to William's motion to remand;

Williams then filed a reply memorandum on December 23, 2008.

**B.     Relevant Facts.**

A review of the deposition testimony reveals the following relevant facts. Sims was born and raised in Cullen, Louisiana. See Record Document 21, Ex. B at 19. At some point in the late 1970s or early 1980s, Sims and his wife moved to Houston, Texas. The couple lived with Sims's sister for seven to nine months while searching for employment. See id. at 20. The couple then moved into a house for about three to four years; they then lived in several different apartments. Due to financial and marital difficulties, the couple was forced to leave the apartment.[1] Sims then moved in with his sister in Houston, Texas and his wife returned to Cullen, Louisiana. See id.

Since 1995, Sims has worked as an over-the-road truck driver for Celadon. See id., Ex. A at 5. Due to the nature of his job, Sims might stay one or two days per month in both Cullen, Louisiana and Houston, Texas. See id. at 7. According to Sims, "If I get a load going through Cullen, I go by there. If I get a load going through Houston, I go by there. So it's no definite home time." Id. at 8.

## II. LAW AND ANALYSIS

**A.     Jurisdictional Standard.**

For cases arising under 28 U.S.C. § 1332, the Supreme Court requires complete

---

[1] Sims's wife testified in her deposition as follows: "We've been separated since about '95. We both lived in Houston. I left and came back to Louisiana, he stayed in Houston. So I've been in Louisiana since then. And we just do better apart than we do together." Record Document 21, Ex. B at 7.

diversity of citizenship between all plaintiffs and all defendants. See Strawbridge v. Curtiss, 7 U.S. (3 Cranch) 267, 2 L. Ed. 435 (1806). Complete diversity "requires that all persons on one side of the controversy be citizens of different states than all persons on the other side." Harvey v. Grey Wolf Drilling Co., 542 F.3d 1077, 1079 (5th Cir. 2008).

The removing party bears the burden of showing that federal jurisdiction exists and that removal was proper. See De Aguilar v. Boeing Co., 47 F.3d 1404, 1408 (5th Cir. 1995). "Any ambiguities are construed against removal because the removal statute should be strictly construed in favor of remand." Manguno v. Purdential Prop. and Cas. Ins. Co., 276 F.3d 720, 723 (5th Cir. 2002).

**B.    Law Of Domicile.**

An individual acquires a "domicile of origin" at birth. See Preston v. Tenet Healthsystem Mem'l Med. Ctr., Inc., 485 F.3d 804, 814 (5th Cir. 2007). This domicile is presumed to continue absent sufficient evidence of change. See id. To rebut this continuing presumption and establish a new "domicile of choice," an individual must demonstrate both "(1) residence in a new state, and (2) an intention to remain in that state indefinitely." Acridge v. Evangelical Lutheran Good Samaritan Soc'y, 334 F.3d 444, 448 (5th Cir. 2003). "There is no durational residency requirement in the establishment of domicile; once presence in the new state and intent to remain are met, the new domicile is instantaneously established." Id.; 15 Moore's Federal Practice, § 102.34[10] (3d ed.2001).

To determine whether an individual's domicile has changed, courts must

address a variety of factors, none of which is determinative. See Coury v. Prot, 85 F.3d 244, 251 (5th Cir. 1996). "The court should look to all evidence shedding light on the litigant's intention to establish domicile." Id. The relevant factors include the places where the individual: (1) exercises civil and political rights, (2) pays taxes, (3) owns real and personal property, (4) has driver's and other licenses, (5) maintains bank accounts, (6) belongs to clubs and churches, (7) has places of business or employment, and (8) maintains a home for his family. See id. "A litigant's statement of intent is relevant to the determination of domicile, but it is entitled to little weight if it conflicts with the objective facts." Id.

## C. Analysis.

Although Sims's "domicile of origin" is Louisiana, when he moved to Texas over twenty years ago, Sims established a residence and intended to remain there indefinitely. Thus, Sims's "domicile of choice" became Texas. For the court to grant Williams's motion to remand, Sims would have to established a new "domicile of choice" in Louisiana. To aid in its analysis, the court will address the relevant Coury factors.

First, Sims exercises civil and political rights and duties in Texas. Sims has been registered to vote in Texas since the early 1990s. See Record Document 21, Ex. A at 8. In 2006, Sims was summoned for jury duty; although he was not chosen to sit on a jury, he received a check from the Treasurer of Harris County, State of Texas made payable to "Sims, Anthony Blake, 8909 N. Main, Houston, Texas." See Record Document 28 at 5.

Second, Sims pays his share of taxes on two pieces of property that he and his siblings inherited in Louisiana. See id. at 12-14. He does not pay any taxes in Texas. See id. Although this factor would ordinarily favor a Louisiana domicile, it seems that Sims was forced to pay these taxes only after his mother passed away in 2004. Thus, this factor provides minimal assistance in the determination of Sims's domicile.

Third, Sims owns a one-third interest in a house and parcel of land in Louisiana. See id. However, he does not have a homestead exemption on the house in Louisiana. As mentioned, Sims's ownership interest only arose after his mother's death in 2004. The majority of Sims's personal property is located in Texas. It seems that he only keeps a small amount of clothes in Cullen, Louisiana. See id. at 37.

Fourth, Sims has a Texas commercial driver's license. See id. at 11. Additionally, Sims has taken a written test every two years to renew his Texas hazardous materials endorsement on his license. See id.

Finally, the deposition testimony strongly suggests that Sims intends to live in Texas. Sims's wife stated in her deposition:

Q: Would you be surprised to hear that Mr. Sims said that when he came to Cullen that he considered that to be home?

A: Would I be surprised? I would be very surprised.

Q: And why is that?

. . .

A: Because he hates Louisiana and he hates Cullen. I just would be surprised. I don't think he would say anything like that. He can't

5

stand Louisiana.

Id., Ex. B at 16.

Similarly, when Sims was asked whether he considers the Cullen address the place where he is domiciled, Sims responded: "No. I call Houston my home." Id., Ex. A at 7. When asked where he receives his mail, Sims responded "8909 North Main, [Houston, TX]. I get most of my mail there." Id. at 77. Thus, both the Coury factors and testimony regarding Sims's intent favor a Texas domicile.

### III. CONCLUSION

Based on the foregoing analysis, Sims and Celadon have proved by a preponderance of the evidence that Sims has been domiciled in Texas at all pertinent times. As a citizen of Texas, there is completely diversity between Sims and Williams. Accordingly, Williams's motion to remand based on lack of subject matter jurisdiction is **DENIED**.

**THUS DONE AND SIGNED** at Shreveport, Louisiana, this 26th day of January, 2009.

JUDGE TOM STAGG